UNITED STATES DISTRICT
COURT DISTRICT OF NEW
HAMPSHIRE

| | |
|---|---|
| CHARLES DEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14-cv-00555-JL |
| | ) |
| ANDREW GALLETTA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION
TO MOTION TO DISMISS**

The Defendant, files this Reply Brief in support of his previously filed Motion to Dismiss because the Plaintiff failed to state a claim upon which relief can be granted and because the Defendant is entitled to Qualified Immunity, pursuant to Federal Rules of Civil Procedure 12(b)(6).

A.   The Defendant is Entitled to Qualified Immunity

Dismissal of the complaint is appropriate with regard to the named Defendant based on the doctrine of Qualified Immunity.   A plaintiff may maintain an action for damages against a federal employee personally, thereby subjecting him or her to personal responsibility for payment of damages, for violating the plaintiff's constitutionally protected rights.  Davis v. Passman, 442 U.S. 228 (1979); Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, (1971).  The Supreme Court, however, has held that federal executive officials, other than those performing adjudicatory or prosecutorial functions, are entitled to qualified good faith immunity from personal liability for civil damages. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Butz v. Economou, 438 U.S. 478 (1978).  "[G]overnment

officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. See also Jeffers v. Gomez, 267 F.3d 895, 910-912(9th Cir. 2001). This is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511 (1985); see also Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). Therefore, once an individual raises qualified immunity in a Bivens action, the plaintiff cannot maintain the action against the federal official in his or her individual capacity unless the plaintiff can show that the defendant violated a clearly established Constitutional right. Siegart v. Gilley, 500 U.S. 226 (1991); Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993). This inquiry focuses on whether a reasonable official would have found the defendants' conduct to be illegal. Abdul-Akbar, 4 F.3d at 205; Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993), cert. denied, 114 S.Ct. 559 (1993). Normally, qualified immunity should be decided by the court before trial. Hunter, 502 U.S. at 227. See also Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000). The Plaintiff has the burden of showing that the defendant federal employees violated his clearly established Constitutional rights. Zeigler v. Jackson, 716 F.2d 847 (11th Cir. 1983).

The Harlow rule on qualified immunity was further clarified by the Supreme Court in Anderson v. Creighton, 483 U.S. 635 (1987), as follows: "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, ... assessed in light of the legal rules that were "clearly established" at the time it was taken." Id. at 639 (citation to Harlow omitted). Both questions are to be decided by the court. This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violated the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)). As long as a defendant government employee could reasonably have thought his actions were consistent with the rights he was alleged to have violated, said employee is entitled to qualified immunity.

Anderson, 483 U.S. at 638.

Government officials are not expected to be legal scholars like law professors. Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir.), cert. denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987). The contours of the right allegedly violated must be sufficiently clear so that a reasonable government official would understand that his or her conduct violated the plaintiff's constitutional rights. Officers who reasonably but mistakenly conclude their conduct was lawful are entitled to immunity. Anderson, 483 U.S. at 641; Hunter, 502 U.S. at 228-229. Furthermore, the Supreme Court recently clarified the standard for the qualified immunity defense, making it much more difficult for Plaintiff to prevail. Saucier v. Katz, 533 U.S. 194 (2001). In Saucier, the Court held that the lower courts had been ignoring a significant threshold question. Specifically, this Court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01. Only if Plaintiff's allegations make out a constitutional violation does the analysis move to the second sequential step, asking "whether the right in question was clearly established." Id. The Court went on to caution, however, that this second inquiry is not taken in a broad, general context, but must be "undertaken in light of the specific context of the case." Id. The reason for such an analysis is to avoid treating prison administrators as attorneys or holding them to an impossible standard. As such: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. (internal citations omitted). Thus, if the law "did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.

(citing Harlow v. Fitzgerald, 457 U.S. 800 (1982); Malley v. Briggs, 475 U.S. 335 (1986)).

In the present case, Plaintiff has not shown the Defendant violated any of his

Constitutional rights. Therefore, he has failed to establish his burden of proof, as required by Saucier, Anderson and Harlow. Assuming for the sake of argument, however, that any of Plaintiff's allegations constituted violations of his Constitutional rights, none of those rights were so clearly established as to satisfy the second prong of the Saucier analysis. Because none of Plaintiff's clearly established Constitutional rights were intentionally violated by the named Defendant, the Defendant is entitled to Qualified Immunity.

B.   There is no Basis Upon Which to Continue This Action Against the Defendant.

Plaintiff alleges that the Defendant is subject to personal liability, based solely upon the allegation that the Defendant stated with specificity that the risks of poison to the Plaintiff by the product given to the Plaintiff were stated on the label of the product. Plaintiff claims the defendant acted with deliberate indifference by giving the product to the Plaintiff without following any of the safety measures called for when using such a product.

On December 22, 2014, United States Judge Andrea K. Johnstone, conducted a Preliminary Review granting the Plaintiff leave to file an amended complaint against the Defendant. In the Preliminary Review Standard, the court stated the court may dismiss claims asserted in an inmate's complaint if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Under the Discussion, the court stated the Plaintiff had asserted that the Defendant was acting within the scope of his employment with respect to the same incidents that give rise to Plaintiff's previously filed tort claims. The court ruled by operation of 28 U.S.C. § 2679(d)(1), the United States would be substituted for the Defendant in that case. The court continued and stated if the Defendant was deemed to have acted within the "scope of his employment" with respect to the issues here the December 10 Order in Dean I, dismissing the FTCA claims in that case, would likely be given preclusive effect here, cf. Latin Am. Music Co. v. Media Power Grp., 705 F.3d 34, 42 (1st Cir. 2013).

The court, then reviewed the Plaintiff's Eighth Amendment Claim. In the review, the court stated "Dean, in the complaint, refers to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). It appears, therefore, that Dean may intend to assert that Galletta violated Dean's Eighth Amendment rights. The facts as asserted, however, are insufficient to demonstrate that Galletta was subjectively aware of the danger to Dean and that, despite such awareness, Galletta acted with deliberate indifference by failing to take reasonable measures to ameliorate the risk to Dean's health and safety. <u>Cf.</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). This court, accordingly, provides Dean with leave to amend the complaint, by January 26, 2015, to clarify whether he asserts an Eighth Amendment claim under <u>Bivens</u>, and to add such allegations as may be necessary to state a <u>Bivens</u> claim against Galletta and/or any other federal employee." The Plaintiff filed an amended complaint alleging the Defendant violated Plaintiff's Eighth Amendment rights. The allegations from the original claim had not changed. As previously stated by the court, "The facts as asserted, however, are insufficient to demonstrate that Galletta was subjectively aware of the danger to Dean and that, despite such awareness, Galletta acted with deliberate indifference by failing to take reasonable measures to ameliorate the risk to Dean's health and safety. <u>Cf.</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)." Although the court provided the Plaintiff with leave to clarify whether he asserts an Eighth Amendment claim under <u>Bivens</u>, and to add such allegations as may be necessary to state a <u>Bivens</u> claim against the Defendant, the Plaintiff failed to do so.

   Plaintiff claims the Defendant acted with deliberate indifference by giving the product to the Plaintiff without following any of the safety measures called for when using such a product.  The Material Data Safety Sheet, (MSDS), Section 8.2  Exposure Controls/Appropriate engineering controls states "Provide adequate ventilation. Where reasonably practicable, this should be achieved by the use of local exhaust ventilation and good general extraction."

On September 3, 2013, the Warden sent an email to all staff working at FCI Berlin. In the email, she stated "As you may be aware, we have had large fans in the corridor leading from Control to the FCI over the last few days. These were in placed to ensure that the area was

properly ventilated and that the floor was dry. You will note, that sometime today, the fans will be removed as it has been determined that the intended effect has been accomplished. While you may still notice an odor, we have been assured that there is no further need for these precautions. Mark Williams, our Environmental and Safety Compliance Administrator, has been in close contact with the manufacturer and Central Office Occupational Health and Safety experts, and he is available to respond to any concerns you may have. Please feel free to contact him at ext 4347. " The fans referred to in the email, were the same fans placed in the corridor prior to the Plaintiff applying the Floor epoxy and the same fans the Plaintiff refers to on his injury report. Specifically, the Plaintiff stated "Large fans ran during the project, but never exhausted to fresh air. He recommended training; protective equipment and ventilation would have prevented his condition." The court should note that in the email from the Warden, she stated "<u>These were in placed to ensure that the area was properly ventilated</u> and that the floor was dry." The Plaintiff received training, as indicated in his training record. The training document was signed by the Plaintiff and his supervisor on January 7, 2013. The label on the Floor Epoxy mentions the use of a respirator one time. The verbiage when referring to the use of a respirator states "**WARNING!** If you scrape sand or remove old paint, you may release lead dust. "The corridor floor is a concrete floor. It was not painted and did not need to be scraped, therefore, no respirator was required. A respiratory protection program that meets OSHA 1910.134 and ANSI Z88.2 requirements must be followed <u>whenever workplace conditions warrant a respirator's use</u>. A NIOSH/MSHA approved air purifying respirator may be permissible under certain circumstances where airborne concentrations are expected to exceed exposure limits." The exposure limits listed in this section were not exceeded, making the need for respiratory equipment unnecessary. The Material Data Safety Sheet, (MSDS), Section 2, Hazard Identification contains precautionary statements. It states, in part, "Avoid breathing dust, fumes, gases, mists, vapors, or sprays. Wear protective gloves/protective clothing/eye protection/face protection." This section does not mention the requirement for a respirator.

The Defendant contacted and received an email from Rustoleum, the company that makes the Floor Epoxy. In the email, Rustoleum stated the two industrial fans placed in the corridor, combined with the installed ventilation system, were sufficient to provide adequate ventilation. Finally, the Defendant did not purchase the floor epoxy, utilized by the Plaintiff. This product was purchased by the Facilities Department, at the direction of the Associate Warden of Programs, who was the direct supervisor of the Defendant.  The Associate Warden directed the Facilities Department to order this product, after the Defendant advised him of the product, the intended use and location of the project.  The Associate Warden of Programs actions placed the Defendant in a position where a reasonable officer would believe his conduct was lawful, satisfying the defense of Qualified Immunity, specifically, The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, as stated in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

     Plaintiff fails to allege facts stating any actionable claim against the Defendant. The Eighth Amendment protects prisoners from cruel and unusual living  conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a Plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the Plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Strickler v. Waters, 989 F.2d 1375,1380-1381 (4th Cir. 1993), or that Plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling v. McKinney,509 U.S. 25, 31 (1993). To satisfy the subjective element of a conditions claim, Plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm. Farmer v. Brennan,

511 U.S. 825, 835 (1994). To prove deliberate indifference by an official, Plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, Plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. The court cannot find that Plaintiff's complaint states any claim of constitutional significance. First, Plaintiff does not allege facts on which he could prove that the paint fumes presented a serious risk of harm. Indeed, he does not allege that any of the other inmates, or staff exposed to the air in the corridor, suffered serious injury. Plaintiff offers nothing more than his own perceptions to support his assertion that the corridor ventilation system was substandard. Indeed, Plaintiff fails to offer any evidence on which he could prove that his own alleged medical problems were caused or aggravated by exposure to paint fumes. Any medical problems the Plaintiff suffers from can be linked to his childhood condition of Asthma. Specifically, a medical assessment was conducted on June 18, 2015. In section for the reason for request for a medical assessment, it states, 51 year old black male with history of obesity. Complains of difficulty breathing during sleep. States he had asthma as a child. Had Epworth sleepiness scale (15/24) done on April 20, 2015 and recommendations for a sleep study was approved. Even assuming that Plaintiff could prove that the fumes were trapped in the corridor in a concentration level high enough to present a substantial risk of harm to him, other inmates and staff, he fails to allege facts demonstrating Defendant's deliberate indifference to that risk. The Plaintiff has presented no set of facts consistent with his current, detailed allegations that would state any claim of constitutional significance actionable under § 1983. *66

      The Plaintiff volunteered to perform the job of applying the floor epoxy in the corridor of the FCI. He did this, because he had previously applied the same Floor Epoxy in a small office in the powerhouse.  Because the Plaintiff volunteered to perform the job of applying the floor epoxy in the corridor of the FCI, he in fact, chose to perform the work. One case outside of this Circuit is particularly on point: Wooten v. Goord, 2004 WL 816919 (W.D.N.Y. March 25, 2004), aff'd., 2005 WL 387971 (2nd Cir. Feb. 17, 2005).  In Wooten, inmate employees complained of health

risks associated with the dust, fumes, noise and chemicals used in a print shop at the institution. While the district court found that the conditions did not rise to the level of seriousness necessary for a constitutional violation because the complaining prisoners either suffered no injuries or de minimus ones[9], the appellate court affirmed solely on the fact that the prisoners chose to work in the print shop. <u>Id</u>. at p.2 ("[I]nmates are free to choose where they work"). Although the Second Circuit refused to establish a "voluntariness" factor as a bright line test, it held that "the minor health problems already experienced by plaintiffs-e.g. headaches, nausea, skin irritation-do not give rise to constitutional concerns in a context where the Plaintiff inmates knowingly and voluntarily subject themselves to the conditions causing those problems." <u>Id</u>., 2005 WL 387971 at p. 3. <u>See also</u> <u>Christopher v. Buss</u>, 384 F.3d 879, 882-83 (7th Cir. 2004), <u>quoting</u> <u>Haas v. Weiner</u>, 765 F.2d 123, 124 (8th Cir. 1985)("'conduct in which one voluntarily engages can hardly be said to violate the Eighth Amendment.'"). <u>Cf</u>. <u>Bagola v. Kindt</u>, 131 F.3d 632, 645 n.18 (7th Cir. 1997)(voluntary participation not dispositive if cruel and unusual punishment shown).

D. **CONCLUSION**

Therefore, this action should be dismissed because: 1) The Defendant is entitlement to qualified immunity; 2) The Plaintiff failed to state a claim upon which relief can be granted.

Respectfully submitted,

ANDREW GALLETTA
/s/ Andrew Galletta
Captain, FCI Belin NH
1 Success Loop Road
Berlin, NH 03570
603-342-4000
Bop18244@bop.gov

## CERTIFICATE OF SERVICE

I certify that on this 8th day of October 21, 2015, a copy of the above Defendant's Reply to Plaintiff's Objection to Motion to Dismiss were mailed, via first class, postage prepaid mail to Charles Dean, pro se plaintiff, at #43732-279, Satellite Camp, FCI-Texarkana, Texas 75505.

/s/ Andrew Galletta

_____

Andrew Galletta