```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Charles Dean

   v.                                              Civil No. 14-cv-555-JL

Andrew Galletta


### REPORT AND RECOMMENDATION

Proceeding pro se, federal prisoner Charles Dean has brought a Bivens action[1] against Captain Andrew Galletta of the Federal Correctional Institution, Berlin, New Hampshire ("FCI-Berlin"), who is also proceeding pro se.  Before me for a report and recommendation is defendant's motion to dismiss (doc. no. 18).  Plaintiff objects.  For the reasons that follow, Galletta's motion to dismiss should be granted.

### Background

Dean claims that while he was an inmate at FCI-Berlin, Capt. Galletta, director of institutional safety and security, violated the Eighth Amendment by directing Dean to undertake a multi-day job of applying a two-part solvent-based, epoxy resin floor coating, in an unventilated area, without a respirator,

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

contrary to the product's warning label about the toxic nature of product fumes, package instructions, and Bureau of Prisons ("BOP") workplace safety regulations.  Dean further alleges that Galletta knew Dean needed a respirator or better ventilation in the area to avoid inhaling toxic fumes while applying the product to the floor, but that Galletta did not take steps to alleviate the risk, even after Dean and several prison employees became sick from their exposure to the fumes.

The complaint identifies the product as a Rust-oleum brand, two-part solvent-based, epoxy resin-type, semi-gloss floor-coating kit, which the order form states contained less than 250 g/L of volatile organic compounds.  See Compl. (doc. no. 1) ¶ 12; Ex. 1 (doc. no. 1-1), at 1.  Dean further alleges that a clear label on the floor-coating kit warned that it emitted toxic fumes, and also stated that the product must be used in accordance with the instructions, which included an instruction about respirator use.

Dean alleges he worked without a respirator applying the floor coating in an inadequately ventilated area, for more than fifteen hours over the course of three consecutive days, including almost six hours on August 23, almost nine hours on August 24, and for an additional period of time on August 25,

2013, until he was ordered to stop.[2] Dean alleges he complained about nausea to his prison counselor after work on August 24, and that the counselor gave him a paper dust mask to use on August 25. Dean worked again on August 25, wearing that paper dust mask, until an FCI-Berlin lieutenant stopped Dean, after a corrections officer had complained that the fumes made her sick.

Dean sought medical attention for headaches, nausea, dizziness, and shortness of breath after he stopped working on August 25, 2013, and Dean was sent to a hospital for diagnosis and treatment relating to those symptoms on August 28, 2013. Dean alleges that four FCI-Berlin employees, with more limited exposure to the paint fumes than Dean, also became ill or sought medical attention for their exposure, and that the prison closed off the work area for a number of days afterwards to allow the fumes to dissipate. A doctor's note attached as an exhibit to the complaint, relating to an examination occurring in March 2014, states that Dean's description of his symptoms, dating back to August 2013, is typical for solvent exposure in a poorly

---

[2] An attachment to the complaint in the related case, Dean v. United States, No. 14-cv-184-JL (D.N.H.), indicates that Dean worked approximately five hours on August 25, 2013. See id., Compl., ECF No. 1, at 11 (Androscoggin Valley Hosp. Emergency Dep't Eval., Aug. 28, 2013).

3

ventilated space.  See Doc. No. 1-1, at 4.

This case is the second of two actions Dean has filed in federal court relating to Dean's prison workplace exposure to a toxic substance that he alleges caused him immediate and persistent breathing problems.  Dean's first action, Dean v. United States, No. 14-cv-184-JL (D.N.H.), asserted Federal Tort Claims Act ("FTCA") claims against the United States, arising out of Galletta's failure to provide Dean with proper safety equipment.  In that case, Dean filed a declaration, stating, under penalty of perjury, that Galletta did not check on Dean or supervise him during the course of Dean's work.  See id., Pl.'s Opp. to Mot. to Dismiss, ECF No. 11, at 2, ¶ 8 ("It was only after other FCI Berlin staff began vomiting blood and becoming severely nauseated that other Berlin staff thought to check on the plaintiff, [Galletta] at no point thinking of checking or supervising the task which [Galletta] had told the plaintiff to perform.").  That FTCA case was dismissed for lack of subject matter jurisdiction, as the FTCA claims were deemed to be precluded by the Inmate Accident Compensation Act.  See id. (D.N.H. Dec. 10, 2014), approving report and recommendation, No. 14-cv-184-JL (D.N.H. Nov. 12, 2014).

Dean filed this action thereafter, naming Galletta as the

4

defendant in his individual capacity, alleging, among other things, that Galletta violated Dean's Eighth Amendment rights by failing to give Dean a respirator. See Am. Compl. (doc. no. 7); Compl. (doc. no. 1). This court allowed the Eighth Amendment claim to proceed against Galletta in his individual capacity.[3] See Mar. 12, 2015, Order (doc. no. 8). Galletta now moves to dismiss (doc. no. 18), invoking both the doctrine of qualified immunity and Federal Rule of Civil Procedure 12(b)(6).

## Discussion

I. **Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts the factual allegations in Dean's complaint as true, construes reasonable inferences in his favor,

---

[3] There are cases from the Sixth Circuit indicating that the Inmate Accident Compensation Act ("IACA") may preclude Bivens actions arising out of prison workplace injuries. See, e.g., Springer v. United States, 229 F.3d 1154, 2000 WL 1140767 at *1, 2000 U.S. App. LEXIS 19501 at *3-*4 (6th Cir. Aug. 8, 2000) (unpublished table decision); Walls v. Holland, 198 F.3d 248, 1999 WL 993765 at *1, 1999 U.S. App. LEXIS 26588 (6th Cir. Oct. 18, 1999) (unpublished table decision). This court finds that the contrary rule adopted by the Seventh, Ninth, and Tenth Circuits is better reasoned, see Smith v. United States, 561 F.3d 1090, 1093-94 (10th Cir. 2009); Bagola v. Kindt, 131 F.3d 632, 637-45 (7th Cir. 1997); accord Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996), and therefore concludes that the IACA does not strip this court of jurisdiction over Dean's Bivens claim.

and determines whether the factual allegations state a claim upon which relief may be granted.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014).  As both Dean and Galletta are proceeding pro se, their pleadings are construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

In considering whether the complaint states a claim, the court's scope of review is limited.  The court may consider "'facts and documents that are part of or incorporated into the complaint,'" as well as "'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'"  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted).  Cf. Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (when qualified immunity is raised in Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'" (emphasis in original)).

## II.  Galletta's Reply Memorandum

Galletta's reply memorandum (doc. no. 23), in support of his motion to dismiss, asserts a number of facts that appear to contradict allegations in Dean's pleadings.  Those factual assertions, which are not properly the subject of judicial

notice, cannot provide grounds for granting the motion to dismiss. See Giragosian, 547 F.3d at 65; see also Behrens, 516 U.S. at 309. Cf. United States v. Bello, 194 F.3d 18, 23 (1st Cir. 1999) ("'[a] high degree of indisputability'" is prerequisite to taking judicial notice of adjudicative facts (citation omitted) (emphasis in original)).

### III. **Eighth Amendment Standard**

Galletta argues that Dean has failed to a state a claim upon which relief can be granted, arising out of Dean's exposure to paint fumes. Prison workplace conditions, like other conditions of confinement, are covered by the Eighth Amendment. See, e.g., Franklin v. Kansas Dep't of Corr., 160 F. App'x 730, 736 (10th Cir. 2005); Bagola v. Kindt, 131 F.3d 632, 645 n.18 (7th Cir. 1997) (Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment upon prison employees in their workplaces). Furthermore, an inmate subjected to a substantial risk of serious harm relating to an exposure to a toxic substance or indoor air pollutant may state a claim for relief under the Eighth Amendment. See, e.g., Helling v. McKinney, 509 U.S. 25 (1993) (Eighth Amendment violation may be found where prison officials exposed inmate to levels of secondhand smoke presenting unreasonable threat of

harm to inmate's future health).  Cf. Clark v. Taylor, 710 F.2d 4, 10 (1st Cir. 1983) (director of state crime lab who gave bottles of benzidine to police stripped of warning label proscribing skin contact, could be found liable under 42 U.S.C. § 1983 for failing to warn police not to put benzidine on inmate's skin, knowing that police had previously used benzidine in that manner, and that benzidine was carcinogenic).

An Eighth Amendment claim challenging the conditions of a prisoner's confinement has an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  To satisfy the objective component of a prison conditions claim, the deprivations alleged must be "extreme."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The subjective component of an Eighth Amendment claim requires the plaintiff to demonstrate that prison officials acted with deliberate indifference to the plaintiff's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'"  Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999) (citations omitted).

Dean has alleged facts indicating that Galletta knew the jobsite was poorly ventilated, as Galletta chose the place where Dean worked, and that Galletta knew from his familiarity with the product at issue and with BOP regulations that Dean would inhale toxic fumes on the job unless he had a respirator, or ventilation in the area was improved.  The court infers from the facts alleged that Galletta knew that the work assignment would likely require Dean to inhale hazardous fumes over a number of days, presenting a health hazard to Dean, and that Galletta also knew that Dean did not have an alternative way of protecting himself, as Dean could not simply stop and leave the jobsite to avoid further exposure.  Thus, the court reasonably infers from the facts alleged in the complaint that Galletta knew of a danger posed to Dean by the work assignment; Galletta was capable of timely providing safety equipment or taking measures to alleviate that danger; and Galletta took no steps to do so, deliberately disregarding a known substantial risk of harm to Dean's health.  See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("severe headaches, dizziness, nausea, vomiting, and breathing difficulties stemming from exposure to [environmental tobacco smoke] constituted a serious medical need"); Masonoff v. DuBois, 899 F. Supp. 782, 797 (D. Mass. 1995) ("daily contact

with a hazardous substance which causes rashes, burning, tearing eyes and headaches meets the objective part of the test for a violation of the Eighth Amendment"). Accordingly, Dean has stated an Eighth Amendment claim for relief for Galletta's failure to protect Dean.

**IV.  Qualified Immunity**

Galletta argues that he is entitled to qualified immunity. A government official named as a defendant in a prisoner civil rights action "'is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014) (quoting Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam)). Qualified immunity "protect[s] government functionaries who could not reasonably have predicted that their actions would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct." Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999). Qualified immunity "'protects all but the plainly incompetent or those who knowingly violate the law.'" Hunt, 773 F.3d at 367 (citation omitted). When a defendant invokes qualified immunity, the burden is on the plaintiff to show the

inapplicability of the defense.  See Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 215 (1st Cir. 2015).

In determining whether a defendant has qualified immunity in the context of a motion to dismiss, "[o]n the basis of the pleadings," the court "must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (citations and internal quotation marks omitted).  Plaintiff has stated a claim for relief, thus satisfying the first part of the qualified immunity inquiry.

The second part of the qualified immunity inquiry, in turn has two related aspects:  (1) the clarity of the law "at the time of the alleged violation"; and (2) the clarity of the law with respect to the "specific facts of the case at bar."  Id. at 9.  The focus on the time of the alleged violation means that "then-existing" precedent must have "'placed the statutory or constitutional question . . . beyond debate.'"  Rivera-Corraliza, 794 F.3d at 215 (citations omitted).  In other words, "controlling authority" in the relevant jurisdiction, or -- in the absence of controlling law -- a "robust consensus of

persuasive authority" existed, making the conduct undebatably illegal at the time of the alleged violation.  <u>Id.</u> at 214-15 (citations and internal quotation marks omitted).

The second aspect of the "clearly established" inquiry "considers the specific facts of the case at bar."  <u>Rocket Learning</u>, 715 F.3d at 9.

> The "clearly established" inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.  Thus, [t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful <u>in the situation he confronted</u>.

<u>Id.</u> (citations and internal quotation marks omitted).

Applying the relevant standard, the court constructs the "clearly established" inquiry at this stage of the case to be the following:  Would it have been clear to a reasonable officer in August 2013, in assigning a multi-day painting task to an inmate involving direct, unmediated, substantial exposure to or inhalation of a hazardous substance, that the officer would violate the inmate's Eighth Amendment rights if the officer took no steps to alleviate known serious health risks?  For reasons stated below, the answer to that question is, "no."

Neither the First Circuit nor the Supreme Court has addressed that question directly, and there is no controlling

law in this jurisdiction, derived from any closely analogous case, where prison officials are alleged to have taken no steps to alleviate health risks resulting from an inmate's exposure to a prison workplace hazard or toxin.  The rule that emerges from analogous cases in other jurisdictions, involving exposures of inmates to workplace hazards, is that when the inmate's exposure is known to be substantial, direct, and immediate, the Eighth Amendment requires the officer to take some steps to attempt to reduce known or obvious serious health risks.  See, e.g., Smith v. United States, 561 F.3d 1090, 1105 (10th Cir. 2009) ("Smith I") (inmate stated Eighth Amendment claim based on allegations that prison officials knew of and disregarded a substantial risk of serious harm in failing to warn him that there was airborne friable asbestos in enclosed workspace where inmate worked); Blay v. Reilly, 241 F. App'x 520, 525 (10th Cir. 2007) (defendants who failed to respond to inmate's complaints of serious health problems, resulting from inmate's exposure to dust and fumes in poorly ventilated workplace, could be held liable for deliberate indifference); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (inmates ordered to clean attic for forty-five hours in presence of friable asbestos, who were not given suitable breathing protection, stated claim for relief

under Eighth Amendment, where pleadings alleged that defendants did not take any steps to inquire into presence of asbestos on site); Marvel v. Prison Indus., No. Civ.A. 99-113-GMS, 2000 U.S. Dist. LEXIS 23602 at *13, 2000 WL 1239962 (D. Del. Aug. 24, 2000) (inmate exposed to paint spray and fumes in poorly ventilated prison paint shop who complained about need for respirator and eye protection stated claim for relief where prison officials refused to provide necessary safety equipment). Cf. Hall v. Bennett, 379 F.3d 462, 465 (7th Cir. 2004) (defendants were potentially liable under Eighth Amendment for ordering inmate to strip live wire without giving him safety gloves or turning off power, where risk of electrocution was obvious).

   In the first four cited cases, and in this case, the jobs at issue involved inhalation of a hazardous substance, and there was evidence or factual allegations (taken as true) otherwise indicating deliberate indifference to a substantial risk of serious harm.  Direct physical contact with materials known to be dangerous (a live wire), unmitigated by safety measures, similarly provided grounds for finding potential liability in Hall.

   There are, however, cases finding similar official conduct

to be at most negligence, and not an Eighth Amendment violation, such as those listed in the footnote below.[4]  Those cases are

---

[4]See, e.g., Smith v. Howell, 570 F. App'x 762, 766 (10th Cir. 2014) ("Smith II") ("weight of authority does not clearly establish a right to be free from even a few hours of exposure to friable asbestos"); Moore v. Faurquire, 595 F. App'x 968, 973-74 (11th Cir. 2014) (defendants not liable for violating Eighth Amendment rights of inmate by denying his request for respirator, where there was no evidence that stripping paint for one week without respirator presented substantial risk of serious harm to inmate, or that defendants knew any substantial risk of serious harm could result); Ward v. Lamanna, 334 F. App'x 487, 491 (3d Cir. 2009) (prison officials who were not subjectively aware of substantial risk of serious harm to inmates exposed to air contaminants in prison shop were not liable under Eighth Amendment for failing to reduce risk of such exposures); Wooten v. Goord, 123 F. App'x 441, 443 (2d Cir. 2005) ("minor health problems" resulting from exposure to work environment in prison print shop, including "headaches, nausea, skin irritations," do "not give rise to constitutional concerns in a context where the plaintiff inmates knowingly and voluntarily subject themselves to the conditions causing those problems"); Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1989) (officer who did not know about any "medical proscriptions" relating to inmate's complaints that paint fumes made him "dizzy and nauseous" was at most merely negligent in ignoring those complaints); Sutton v. Kan. Dep't of Corr., No. 12-3238-SAC-DJW, 2015 U.S. Dist. LEXIS 130118 at *26-27, 2015 WL 5692069 (D. Kan. Sept. 28, 2015) (inmate given inadequate respirator, and then taken off job, after complaining about headaches and nausea resulting from exposure to solvent-based cleaning product, did not state plausible claim of deliberate indifference); Edwards v. Short, No. 5:10cv286-RH/GRJ, 2014 U.S. Dist. LEXIS 64304 at *10, 2014 WL 1871945 (N.D. Fla. Apr. 14, 2014) (where defendant lacked "knowledge that there was a risk of serious harm to Plaintiff caused by toxic dust while Plaintiff was working in [Federal Prison Industries] facilities, Plaintiff cannot demonstrate" deliberate indifference in failing to provide safety equipment), report and recommendation adopted, 2014 U.S. Dist. LEXIS 64301, 2014 WL 1871948 (N.D. Fla. May 9, 2014); Puckett v. Mitchell, No. 1:03-CV-286 03 MU, 2005 U.S. Dist.

15

distinguishable from Dean's for reasons including the lack of the requisite showing of the officer's subjective awareness of the risk, the lack of a showing that the exposure presented a serious health hazard, and the lack of clearly established law indicating that a brief exposure to a hazardous substance presented a substantial risk of serious future harm.  Such legally relevant distinctions, however, are hardly the sort of bright line rules that would ensure that only those officers who are "'plainly incompetent'" or "'who knowingly violate the law'" will be held liable under the Eighth Amendment.  Hunt, 773 F.3d at 367 (citation omitted).  This court cannot conclude, based on its review of extra-jurisdictional case law, that it would have been clear to a reasonable officer at a federal prison in New Hampshire in August 2013, in assigning an inmate a short-term prison floor painting job, knowing it would involve the inmate's direct exposure to hazardous paint fumes in an unventilated area, that it would violate the Eighth Amendment if the officer did not provide the inmate a respirator or take other steps to

---

LEXIS 37247 at *9, 2005 WL 2234595 (W.D.N.C. Sept. 13, 2005) (prisoner who was taken off jobsite shortly after he complained about side effects of painting without adequate ventilation or respirator failed to show deliberate indifference to substantial risk of serious harm).

alleviate the risk of harm to the inmate.

Therefore, qualified immunity shields Galletta from liability at the pleading stage of this case. The district judge should grant Galletta's motion to dismiss (doc. no. 18).

## Conclusion

For the reasons detailed above, the district judge should grant Galletta's motion to dismiss (doc. no. 18). Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 21, 2015

cc: Charles Dean, pro se
    Andrew Galletta, pro se